UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN RYAN,

          Plaintiff,

v.

                                                                Case No. 2:24-cv-10672
                                                             Hon. Mark A. Goldsmith

STATE OF MICHIGAN et al.,

          Defendants.
_____/

**OPINION AND ORDER DENYING (1) PLAINTIFF'S MOTION FOR RECONSIDERATION (Dkt. 13) AND (2) PLAINTIFF'S MOTION TO COMPEL (Dkt. 15)**

Sean Ryan is an inmate at the Thumb Correctional Facility, a Michigan Department of Corrections prison located in Lapeer, Michigan. In March 2024, Ryan filed a pro se civil rights complaint under 42 U.S.C. § 1983. Ryan alleged that employees of the Michigan Department of Corrections and Bureau of Health Care Services violated his Eighth Amendment rights by intentionally delaying and denying treatment for his chronic back pain. This Court dismissed Ryan's complaint on July 23, 2024, for failure to state a claim upon which relief can be granted and immunity. See 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A; Dkt. 11.

Ryan now asks the Court to reconsider its July 23 opinion and order dismissing his complaint. See Mot. for Reconsideration. But Eastern District of Michigan Local Rule 7.1(h)(1) precludes motions for reconsideration of final orders or judgments. Instead, consistent with the Local Rules, the Court construes Ryan's motion as one to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or for relief from judgment under Rule 60(b). Id. For the

reasons explained below, Ryan's motion will be denied. The Court also denies the motion to compel action from the Court as moot.

## I. FEDERAL RULE OF CIVIL PROCEDURE 59(e)

Rule 59(e) provides that a party may move "to alter or amend a judgment" within 28 days of entry of judgment. Relief under this provision is discretionary. Brumley v. United Parcel Service, Inc., 909 F.3d 834, 841 (6th Cir. 2018). "A district court may alter or amend its judgment based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." Id. Importantly, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Id. (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008)). Ryan's motion does not satisfy this standard.

First, Ryan argues that the Court should have permitted him to amend his complaint prior to dismissing the case. Ryan fails to establish that the Court clearly erred on this basis. "Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so." Bishawi v. Ne. Ohio Corr. Ctr., 628 F. App'x 339, 347 (6th Cir. 2014) (citing LaFountain v. Harry, 716 F.3d 944, 951 (6th Cir. 2013)). The Court, therefore, did not abuse its discretion by screening the complaint under Prison Litigation Reform Act of 1996 (PLRA) without providing Ryan the opportunity to amend.

Second, Ryan objects to the dismissal of the State of Michigan on the basis of immunity. He argues that the ruling is contrary to the clearly established law of Moldowan v. City of Warren, 578 F3d. 351 (6th Cir. 2009). Mot. for Reconsideration at PageID.243. Ryan asserts that Moldowan stands for the proposition that "Michigan law makes clear . . . that "[g]overnmental immunity is not available . . . where it is alleged that the state has violated a right conferred by the

2

Michigan Constitution." Id. However, Ryan's reliance on Moldowan is misplaced. The quoted language Ryan relies upon does not address the issue of Eleventh Amendment immunity in a § 1983 action, which is relevant and applicable here. As stated in the opinion, the Eleventh Amendment bars civil rights actions against a State and its agencies and departments unless the State has waived its immunity and consented to suit or Congress has abrogated that immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). "The State of Michigan . . . has not consented to being sued in civil rights actions in the federal courts," Johnson v. Unknown Dellatifa, 357 F.3d 539, 545 (6th Cir. 2004), and Congress did not abrogate state sovereign immunity when it passed § 1983, Chaz Const., LLC v. Codell, 137 F. App'x 735, 743 (6th Cir. 2005). Therefore, the Court did not err by determining the State of Michigan was immune from suit.

Third, Ryan objects to the dismissal of his claims against Defendants Washington, Bureau of Healthcare Service workers, Cargor, Landfair, and Unknown Nursing Supervisor based on their supervisory roles and failure to properly train. As in his complaint, Ryan argues that he notified these Defendants through medical kites about the continued intentional delay of his pain treatment, and they failed to investigate his claims. Ryan does not show that the Court's opinion was based on a clear error of law, nor does he introduce any newly discovered evidence establishing that these Defendants were personally involved in violating his constitutional rights.

A claimed constitutional violation must be based upon active unconstitutional behavior. Grinter v. Knight, 532 F.3d 567, 575–76 (6th Cir. 2008); Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. Grinter, 532 F.3d at 576; Greene, 310 F.3d at 899. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. See Shehee v. Luttrell, 199 F.3d

3

295, 300 (6th Cir. 1999). Because Ryan has not alleged any more than Defendants' failure to act on the information contained in the medical kites, the Court did not err by dismissing these Defendants from the complaint.

Fourth, Ryan objects to the dismissal of his claims against Defendants Unknown Nurses 2, 3, and 4, Nurse Scott, Nurse McAnally, Nurse Bryant, and Nurse Bradley. Ryan disputes the Court's dismissal for lack of personal involvement because each Defendant contributed to the delay in medical care by refusing to see, evaluate him, and answer his requests for medical care. Even accepting Ryan's allegations, he still fails to adequately plead an Eighth Amendment claim against these Defendants.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. Estelle v. Gamble, 429 U.S. 97, 103–104 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. Id. at 104–105; Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104–105. "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Id. A claim for the deprivation of adequate medical care has an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. Id. In other words, the inmate must show

4

that he is incarcerated under conditions posing a substantial risk of serious harm.  Id.  As in the opinion, the Court accepts that Ryan has demonstrated a serious medical need through his chronic conditions.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Farmer, 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.

Ryan fails to show that Defendants intentionally delayed medical treatment by denying or refusing to respond to his medical requests to see the provider.  As shown in his complaint, Nurse 1 prescribed Tylenol and ibuprofen for Ryan's back pain on February 22, 2024.  Compl. (Dkt. 1) at PageID.21.  He was told that he would not be referred to a medical provider at that time because of his upcoming chronic care appointment.  Id.  Ryan then continued to submit numerous medical kites requesting to be seen for his back pain.  Id. at PageID.22–23.  Ryan alleged that the only responses he received explained that he needed to wait until the upcoming chronic care appointment, that he had received some treatment, and could schedule a nurse visit.  These factual allegations do not permit the inference that Defendants were deliberately indifferent to Ryan's medical needs.  Because Ryan had previously met with Nurse 1 and had a scheduled chronic care appointment, during which he would be able to address his back pain with the medical provider, he fails to show that these Defendants intentionally delayed his medical treatment.  Therefore, the Court did not err by dismissing these Defendants from the complaint.

5

Fifth, Ryan objects to the Court's dismissal of Defendant Cobb. He primarily contends that the crux of his argument concerned Grievance Coordinator Cobb's aiding to "cover up" Defendants' unconstitutional conduct by denying him access to grievance forms. See Mot. for Reconsideration at PageID.248–250. He further argues that despite being placed on modified grievance access, Defendant Cobb had a duty to provide him with a grievance form when he made a valid request, which Cobb failed to do. Id.

Ryan's arguments fail because he has no due process right to an effective prison grievance procedure. Federal courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. See Hewitt v. Helms, 459 U.S. 460, 467 (1983); Walker v. Mich. Dep't of Corr., 128 F. App'x 441, 445 (6th Cir. 2005); Argue v. Hofmeyer, 80 F. App'x 427, 430 (6th Cir. 2003); Young v. Gundy, 30 F. App'x 568, 569–570 (6th Cir. 2002). Because Ryan has no liberty interest in the grievance process, Cobb's conduct did not violate his due process rights.

Moreover, Ryan's First Amendment right to petition the government was not violated by Defendant Cobb's refusal to provide Ryan with grievance forms. Defendant Cobb's actions (or inactions) have not barred Ryan from seeking a remedy for his complaints. See Cruz v. Beto, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." Griffin v. Berghuis, 563 F. App'x 411, 415–416 (6th Cir. 2014) (citing Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 130 n.6 (1977)). Indeed, Ryan's ability to seek redress is underscored by his pro se invocation of the judicial process. See Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Ryan had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. See, e.g., Lewis v. Casey, 518 U.S. 343, 355 (1996) (requiring actual injury); Bounds v. Smith, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. See 42 U.S.C. § 1997e(a). If Ryan were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. See Ross v. Blake, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); Kennedy v. Tallio, 20 F. App'x 469, 470–71 (6th Cir. 2001). For these reasons, the Court did not err by dismissing Defendant Cobb from the complaint.

Sixth, Ryan objects to the Court's dismissal of Nurse 1. Specifically, he argues that Nurse 1 was unable to prescribe treatment, knew that Tylenol and ibuprofen would not treat his pain, and intentionally delayed his medical care. Ryan does not present any new facts that would persuade the Court to reevaluate its dismissal of Nurse 1. As discussed in the opinion, Ryan received some pain treatment during the time complained of in the complaint, although it may not have been the exact medication he wanted. Moreover, Nurse 1 was not acting with deliberate indifference by declining to refer him to the medical provider in light of his upcoming chronic care appointment. His claim amounts to nothing more than a difference of opinion over the proper course of treatment, which does not rise to the level of an Eighth Amendment violation. Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Therefore, the Court did not err by dismissing Nurse 1.

Lastly, Ryan contends that the Court abused its discretion by denying his motion to accept

the missing exhibits. The Court screened Ryan's complaint based on the allegations contained therein and determined that each of the claims lacked merit. Nevertheless, the Court has reviewed the exhibits and concludes that the exhibits would not have changed the outcome of the summary dismissal order. Accordingly, the Court did not err by denying Ryan's motion to accept the missing exhibits.

## II. FEDERAL RULE OF CIVIL PROCEDURE 60(b)

Ryan does not fare any better under Rule 60(b). Fed. R. Civ. P. 60(b) allows a court to relieve a party from a final judgment, order, or proceeding for a number of reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

"The party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 454 (6th Cir. 2008) (punctuation modified). Ryan's motion could conceivably fall under the catchall provision of Rule 60(b). See Fed. R. Civ. P. 60(b)(6). But for the reasons stated above, Ryan fails to show that he is entitled to relief.

## III. CONCLUSION

Accordingly, the Court denies Ryan's motion for reconsideration (Dkt. 13). The Court

8

further denies the motion to compel action from the Court to reopen the case (Dkt. 15) as moot because the case remains closed.

SO ORDERED.

Dated: January 7, 2025           s/Mark A. Goldsmith
       Detroit, Michigan         MARK A. GOLDSMITH
                                 United States District Judge